UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

YOLANDA BROWN,

                              Plaintiff,

                                                              Case # 15-CV-794-FPG

v.

                                                              DECISION AND ORDER

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

Yolanda Brown ("Brown" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act.  ECF No. 1.  This Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  ECF Nos. 8, 9.  For the reasons that follow, Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.

## BACKGROUND

On July 16, 2012, Brown protectively applied for SSI with the Social Security Administration ("the SSA").  Tr.[1] 148-53.  She alleged that she had been disabled since September 1, 2009, due to a left knee replacement and depression.  Tr. 155.  After her application was denied at the initial administrative level, a hearing was held via videoconference before Administrative Law Judge Stanley A. Moskal Jr. ("the ALJ") on January 22, 2014, in which the ALJ considered Brown's application *de novo*.  Tr. 31-64.  Brown appeared with her

---

[1]        References to "Tr." are to the administrative record in this matter.

attorney and testified at the hearing.  *Id.*  Timothy P. Janikowski, a vocational expert ("VE"), also appeared and testified.  Tr. 55-62.  On April 17, 2014, the ALJ issued a decision finding that Brown was not disabled within the meaning of the Act.  Tr. 16-26.  On July 10, 2015, that decision became the Commissioner's final decision when the Appeals Council denied Brown's request for review.  Tr. 1-6.  Thereafter, Brown commenced this action seeking review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted).  It is not this Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.  Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71

(1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his

or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.

1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ's decision analyzed Brown's claim for benefits under the process described

above.  At step one, the ALJ found that Brown had not engaged in substantial gainful activity

since the application date.  Tr. 18.  At step two, the ALJ found that Brown has the following

severe impairments: status post left knee replacement, status post cervical surgery, a possible left

partial rotator cuff tear, and asthma.  Tr. 18-21.  At step three, the ALJ found that such

impairments, alone or in combination, did not meet or medically equal an impairment in the

Listings.  Tr. 21.

Next, the ALJ determined that Brown retained the RFC to perform light work[2] with

additional limitations.  Tr. 21-25.  Specifically, the ALJ found that Brown can lift and carry 20

pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours in an eight-hour

workday; and occasionally kneel, squat, or bend.  Tr. 21.  The ALJ also determined that Brown

cannot climb ropes, ladders or scaffolds, work around hazards or heights, or be exposed to

concentrated fumes and gases.  *Id.*  Brown is limited to unskilled work activities and does not

have severe mental limitations.  *Id.*

At step four, the ALJ relied on the VE's testimony and found that this RFC allows Brown

to perform her past relevant work as a cashier and small parts assembler.  Tr. 25.  The ALJ

---

[2]        "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects
weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires
a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of
arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must
have the ability to do substantially all of these activities.  If someone can do light work, [the SSA] determine[s] that
he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or
inability to sit for long periods of time."  20 C.F.R. § 416.967(b).

continued the disability analysis and made an alternative finding at step five.  *Id.*  At step five,
the ALJ relied on the VE's testimony and found that Brown is capable of adjusting to other work
that exists in significant numbers in the national economy given her RFC, age, education, and
work experience.  *Id.*  Specifically, the VE testified that Brown could work as a mailroom clerk
and a counter clerk.  *Id.*  Accordingly, the ALJ concluded that Brown was not "disabled" under
the Act.  Tr. 25-26.

## II.     Analysis

Brown argues that the ALJ erred (1) at step two when he failed to find that her depression
and lower back pain were severe impairments; and (2) by ignoring the opinion of Michael D.
Calabrese, M.D. ("Dr. Calabrese").  ECF No. 8-1, at 17-23.  These arguments are addressed in
turn below.

### A.     Step Two

Brown first argues that that ALJ erred at step two when he found that her depression and
lower back pain were not severe impairments.  ECF No. 8-1, at 18.  Alternatively, Brown asserts
that, even if her depression and lower back pain were not severe impairments, the ALJ erred
when he failed to consider them in making the RFC determination.  *Id.* at 20.  The Commissioner
maintains that the ALJ's step two finding is supported by substantial evidence and that the ALJ
specifically considered Brown's depression and lower back pain in the RFC analysis.  ECF No.
9-1, at 12-16.

At step two of the disability analysis, the ALJ considers the medical severity of the
claimant's impairments.   20 C.F.R. § 416.920(a)(4)(ii).   A "severe impairment" is "any
impairment or combination of impairments which significantly limits [the claimant's] physical or
mental ability to do basic work activities."   20 C.F.R. §§ 416.920(c), 416.921.  "Basic work

activities" are "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).

These include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling,

seeing, hearing, speaking, understanding, carrying out instructions, remembering simple

instructions, use of judgment, responding appropriately to supervision, co-workers, and usual

work situations, and dealing with changes in a routine work setting.  20 C.F.R. §§ 416.921(b)(1)-

(6); *see also Peralta v. Colvin*, No. 5:14-CV-0068 (LEK/TWD), 2015 WL 1505708, at *4

(N.D.N.Y. Mar. 31, 2015).  It is the claimant's burden to present evidence that establishes the

severity of his or her impairment.  20 C.F.R. § 416.912(c).  The claimant must demonstrate "that

the impairment has caused functional limitations that precluded him [or her] from engaging in

any substantial gainful activity for one year or more."  *Perez v. Astrue*, 907 F. Supp. 2d 266, 272

(N.D.N.Y. 2012) (citing *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) and *Rivera v.*

*Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).  A finding of not severe should be made if the

medical evidence establishes only a slight abnormality that would have no more than a minimal

effect on an individual's ability to work.  *Perez*, 907 F. Supp. 2d at 271; S.S.R. 85-22, 1985 WL

56858, at *3 (S.S.A. Jan. 1, 1985).

The SSA's regulations require the ALJ to consider nonsevere impairments when

assessing the claimant's RFC.  *See* 20 C.F.R. § 416.945(a)(2) ("We will consider all of your

medically determinable impairments of which we are aware, including your medically

determinable impairments that are not 'severe' . . . when we assess your [RFC].").  Remand is

required when the ALJ fails to account for the claimant's nonsevere impairments when

determining his or her RFC.  *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012)

(summary order) ("[A]fter finding that [the claimant]'s mental impairment of depression does

not cause more than minimal limitation in her ability to perform basic mental work activities and

is therefore nonsevere, . . . the ALJ determined [the claimant]'s RFC without accounting for any of the limitations arising from her mental impairment[.] Thus, the ALJ committed legal error.") (internal quotation marks and alterations omitted).

### 1.     Depression

The ALJ discussed Brown's depression at length at step two of the disability analysis. Tr. 18-20.  The ALJ first noted that the administrative record contradicted Brown's allegations that her mental impairments caused "drastic and dramatic, ongoing symptoms."  Tr. 19.  The ALJ explained, for example, that the record showed little allegation of significant depression until January 2013, which was more than three years after Brown's alleged disability onset date. Tr. 19.  Treatment notes indicated that Brown was frustrated with the pain caused by her motor vehicle accident, but she did not allege or reveal problems due to severe mental impairments.  *Id.* The ALJ pointed out that Brown alleged she "yelled and screamed" at doctors on several occasions due to pain—not due to any mental condition—yet the medical records did not document any such outbursts.  *Id.*  (citing Tr. 1034).  Accordingly, the ALJ gave "little weight" to these reports because they showed "minor symptoms" and did not demonstrate a "severe" mental impairment.  Tr. 19.

The ALJ also analyzed treatment notes from consultative psychiatric examiner Susan Santarpia, Ph.D. ("Dr. Santarpia").  Tr. 19.  Dr. Santarpia indicated that Brown reported some symptoms of depression, but she opined that Brown can follow and understand simple directions and instructions, perform simple tasks independently, maintain attention, concentration, and a regular schedule, learn new tasks, and make appropriate decisions. *Id.*; Tr. 749.  She also opined that Brown is mildly impaired in performing complex tasks independently, relating adequately with others, and appropriately dealing with stress, and that Brown's difficulties in these areas

were due to a lack of motivation.  *Id.*  Dr. Santarpia concluded that "[t]he results of the present evaluation appear to be consistent with psychiatric problems, but, in and of itself, it does not appear to be significant enough to interfere with [Brown]'s ability to function on a daily basis." Tr. 749-50.

The ALJ concluded that Dr. Santarpia's opinion failed to show that Brown "has any 'severe' impairments within the meaning of the Act and Regulations." Tr. 19.  The ALJ gave "great weight" to Dr. Santarpia's opinion because it was detailed in nature, from an approved medical source, appeared consistent with the persuasive medical evidence, and drew reasonable conclusions when examined in light of the record as a whole.  Tr. 19-20; *see also* 20 C.F.R. § 416.927(c) (setting forth the factors an ALJ considers when weighing medical opinions).

The ALJ also considered the assessment of review psychiatrist J. Echevarria, M.D. ("Dr. Echevarria").  Tr. 20.  After reviewing the medical record, Dr. Echevarria concluded that Brown did not have a severe mental impairment.  *Id.* (citing Tr. 755-68).  The ALJ gave "great weight" to that opinion because it was supported by a specific, detailed evaluation of the record and was consistent with Dr. Santarpia's opinion.  *Id.* (citing Tr. 747-50, 767).

The ALJ also complied with the "special technique" that requires ALJs to assess four categories of functionality: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decomposition."  20 C.F.R. § 416.920a(c)(3); *Jenkins v. Comm'r of Soc. Sec.*, 769 F. Supp. 2d 157, 160 (W.D.N.Y. Jan. 10, 2011).  The ALJ concluded that Brown had "mild limitation" in activities of daily living, social functions, and concentration, persistence, or pace, and that she experienced no episodes of decompensation.  Tr. 20. Accordingly, the ALJ concluded that Brown's depression was a nonsevere impairment.  *Id.*; *Jenkins*, 769 F. Supp. 2d at 160 ("A finding of "mild" or less in the first three categories, coupled

with a finding of "none" in the final category and the absence of contrary evidence, directs the conclusion that a claimant's mental impairment is not severe.") (citation omitted); 20 C.F.R. § 416.920a(d)(1).

Based on the ALJ's thorough discussion of Brown's depression and the medical evidence of record, this Court finds that the ALJ's step two determination was supported by substantial evidence and that any conflicts in the medical evidence were within the ALJ's discretion to resolve. *Collier v. Colvin*, No. 15-CV-230-FPG, 2016 WL 4400313, at *5 (W.D.N.Y. Aug. 17, 2016) (citing *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 112 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.") (citation omitted)).   Most significantly, neither Dr. Santarpia nor Dr. Echevarria opined that Brown's depression caused more than a slight abnormality that would have more than a minimal effect on her ability to work. *See Perez*, 907 F. Supp. 2d at 271; S.S.R. 85-22, 1985 WL 56858, at *3.   Brown failed to carry her burden at step two to provide evidence showing that her depression was severe or caused functional limitations that precluded her from performing substantial gainful activity.

This Court also finds that the ALJ properly considered Brown's depression in the RFC assessment.   The ALJ mentioned Brown's mental impairments twice in making the RFC determination (Tr. 22, 24) and referred to his step two analysis that discussed Brown's depression in great detail.   The ALJ specifically noted in the RFC assessment that Brown "can perform unskilled work activities, and has no severe mental limitations." Tr. 21.   Thus, the ALJ did not err because it is apparent that he considered the impact of Brown's depression when he made the RFC determination.

2.      **Lower back pain**

The ALJ also considered Brown's lower back pain at step two of the disability analysis. Tr. 18.  He noted that Brown complained of lower back pain, but that "the objective diagnostic testing does not support the presence of such impairments to the extent that they represent 'severe' impairments within the meaning of the Act and Regulations."  Tr. 18.   The ALJ continued the remainder of his analysis with respect to Brown's lower back pain in the RFC discussion.  *Id.*

In his RFC discussion, the ALJ summarized and analyzed treatment notes related to Brown's alleged lower back pain from Tinh Dao, M.D. ("Dr. Dao"), who saw Brown for several years.  Tr. 23 (citing Tr. 253-472).  The ALJ noted that these records showed "very little in the way of objective clinical findings."  Tr. 23.  According to Dr. Dao's January 8, 2010, report, for instance, Brown's lumbar spine MRI performed on September 5, 2009, showed only mild degenerate disc and facet changes or arthrosis.  *Id.* (citing Tr. 276).  Similarly, X-rays taken in November 2009 showed no evidence of lumbar arthritis, and lumbar spine MRIs taken in January 2010 and March 2013 showed only mild changes.  Tr. 23 (citing Tr. 301, 458, 460). Brown also demonstrated normal gait and station, full muscle strength in all groups tested, and normal muscle tone.  Tr. 23-24 (citing Tr. 420, 434, 1005).  The ALJ thus concluded that "[n]o diagnostic evidence supports a conclusion that [Brown] indeed suffers from any lumbar radiculopathy, or indeed that she has anything more than minor lower back changes not supportive of significant limitation."  Tr. 23.

The ALJ also noted that Dr. Tao completed an RFC questionnaire that indicated that Brown had mild lumbar spine degenerative disease that reduced lumbar flexion.  Tr. 25 (citing Tr. 473-77).  Dr. Tao indicated that he was "unable to determine" whether Brown's impairment

would functionally limit her in a competitive work situation.  Tr. 25, 475.  Dr. Tao opined that Brown did not require a sit/stand opinion, unscheduled breaks, the option to elevate her legs, or any assistive devices.  Tr. 476-77.  He also opined that Brown could occasionally twist, stoop, crouch, squat, and climb ladders or stairs.  Tr. 477.

The ALJ also relied on the opinion of consultative examiner Donna Miller, M.D. ("Dr. Miller") when he evaluated Brown's lower back pain.  Tr. 24-25 (citing Tr. 751-54).  The ALJ noted that Dr. Miller found Brown to have "some restriction involving her lumbar spine range of motion, but in general [Brown] was found to have full, 5/5 strength in all her extremities, no evidence of any muscle atrophy, and intact hand and finger dexterity."  *Id.*  Dr. Miller opined that Brown had only mild limitations in repetitive kneeling, squatting, bending, lifting, and carrying.  Tr. 25 (citing Tr. 754).  The ALJ gave "great weight" to Dr. Miller's opinion because it was consistent with the medical evidence of record.  Tr. 25; *see also* 20 C.F.R. § 416.927(c)(4) (an ALJ is entitled to consider a medical opinion's consistency with the record as a whole when weighing that opinion).

Based on the ALJ's thorough discussion of Brown's lower back pain and the medical evidence of record, this Court finds that the ALJ's step two determination was supported by substantial evidence and that any conflicts in the medical evidence were within the ALJ's discretion to resolve.  *Collier*, 2016 WL 4400313, at *5.  Most significantly, neither Dr. Miller nor Dr. Tao opined that Brown's lower back pain caused more than a slight abnormality that would have more than a minimal effect on her ability to work.  *See Perez*, 907 F. Supp. 2d at 271; S.S.R. 85-22, 1985 WL 56858, at *3.  Brown failed to carry her burden at step two to provide evidence showing that her lower back pain was severe or caused functional limitations that precluded her from performing substantial gainful activity.

This Court also finds that the ALJ properly considered Brown's lower back pain in the RFC assessment. The ALJ specifically noted in the RFC determination that Brown cannot climb ropes, ladders, or scaffolds, or engage in repetitive kneeling, squatting, or bending, which is consistent with Dr. Tao and Dr. Miller's opinions, discussed above. Tr. 21. The ALJ also adopted Dr. Miller's opinion that Brown was mildly limited in lifting and carrying by restricting Brown to light work, which requires lifting and carrying up to 20 pounds occasionally and 10 pounds frequently. Tr. 21; 20 C.F.R. § 416.967(b). Thus, the ALJ did not err because it is apparent that he considered the impact of Brown's lower back pain when he made the RFC determination.

**B.    Dr. Calabrese's Opinion**

Brown also argues that the ALJ erred when he ignored Dr. Calabrese's opinion that she "has been and remains temporarily totally impaired" due to a motor vehicle accident. ECF No. 8-1, at 21-23. The Commissioner maintains that the ALJ properly considered Dr. Calabrese's opinion even if he did not discuss each part of that opinion. ECF No. 9-1, at 16-17.

The SSA's regulations require the ALJ to "evaluate every medical opinion [he or she] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998); 20 C.F.R. § 416.927(c). Unless a treating source's opinion is given controlling weight, the ALJ must consider the following factors when he or she weighs a medical opinion: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether the opinion was rendered by a specialist in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 416.927(c)(1)-(6).

A medical source's statement that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will find that claimant disabled, because it is the Commissioner's responsibility to determine whether a claimant meets the statutory definition of disability. *Cottrell v. Colvin*, No. 15-CV-702-FPG, 2016 WL 4523187, at *4 (W.D.N.Y. Aug. 30, 2016) (citation omitted); 20 C.F.R. § 416.927(d)(1).   However, Social Security Ruling ("SSR") 96-5p explains that

> opinions from any medical source on issues reserved to the Commissioner must never be ignored. The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the [ALJ] must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

S.S.R. 96-5p, 1996 WL 674183, at *3 (S.S.A. July 2, 1996).

Here, Dr. Calabrese opined in several treatment notes dated March 2013 to July 2013 that Brown "has been and remains temporarily totally impaired as a direct result of the motor vehicle collision on 03/11/2013."   Tr. 868, 873, 883, 888, 893.   Although Brown argues that the ALJ "completely ignored" this opinion (ECF No. 8-1, at 22), the ALJ's decision indicates that he discounted Dr. Calabrese's opinion because it was not well supported and was inconsistent with the record as a whole. Tr. 24; *see* 20 C.F.R. §§ 416.927(c)(3)-(4).

The ALJ explained that that although Dr. Calabrese's reports "listed a host of impairments, the objective, diagnostic evidence supporting the vast majority of them is exceedingly weak or else non-existent."   Tr. 23-24 (citing Tr. 866, 882).   The ALJ was entitled to consider whether Dr. Calabrese's opinion was well supported by relevant evidence when he weighed that opinion.   *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents

relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

The ALJ was also entitled to consider whether Dr. Calabrese's treatment notes were contradicted by other evidence in the medical record. Tr. 24; *see* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The ALJ noted, for instance, that despite Brown's allegations of back, shoulder, hip, and knee injuries, MRIs of these areas showed no abnormalities or only mild degenerative changes. Tr. 24 (citing Tr. 984, 1005, 1011). The ALJ also pointed out that, although Brown complained of left shoulder discomfort and was diagnosed with a left rotator cuff tear, no objective evidence confirmed this alleged impairment, she had full strength in her extremities, and she did not display significant disability. Tr. 24 (citing Tr. 943).

The ALJ also noted that Brown had cervical spine surgery in September 2013 and that in December 2013 Brown indicated that she was pleased with the results of the surgery. Tr. 24 (citing Tr. 949). Based on the record, the ALJ found that "[t]here is no significant evidence that [Brown's] status post-surgery condition has resulted in more than the limitations determined in this decision." Tr. 24. The ALJ concluded that "the diagnostic evidence as a whole suggests that while [Brown] may have been severely limited shortly after her cervical surgery, the rest of the alleged impairments and associated limitations are not consistent with the objective diagnostic test results." *Id.*

Finally, to the extent that the ALJ did not explicitly quote Dr. Calabrese's opinion that Brown "has been and remains temporarily totally impaired" due to a motor vehicle accident, this Court is able to "glean the rationale" of the ALJ's decision based on all of the evidence discussed

above.[3]  *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). Accordingly, this Court finds that the ALJ did not err and that he properly weighed Dr. Calabrese's opinion.

## CONCLUSION

For the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED.  Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE.  The Clerk of Court is directed to enter judgment and close this case.


IT IS SO ORDERED.

Dated: November 9, 2016
      Rochester, New York

                                      _____
                                    HON. FRANK P. GERACI, JR.
                                    Chief Judge
                                    United States District Court

---

[3]     Moreover, this Court notes that the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which *has lasted or can be expected to last for a continuous period of not less than 12 months*." 42 U.S.C. § 423(d)(1)(A) (emphasis added). There is no indication that Dr. Calabrese expected Brown to be "totally impaired" for 12 months or more.